IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IBRAHIM ABDULLAH,

        Plaintiff,                   No. CIV S-06-2378 MCE KJM P

    vs.

CDC, et al.,

        Defendants.               FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983, alleging that defendant Cunningham was deliberately indifferent to his serious medical needs on three occasions in May and June 2003 by refusing to give him his prescribed oxygen therapy and refusing to allow him to see a doctor.[1] Defendant Cunningham has filed a motion for summary judgment and objections to some of the evidence plaintiff has offered in opposition to the motion.

/////

---

[1] In the complaint, plaintiff also alleges that defendant Cunningham left him sitting in his cell for ten hours in pain with a prolonged priapism crisis. Second Am. Compl. at 3 (CM/ECF pagination). During his deposition, plaintiff said he would not pursue this claim because he did not remember the exact date and had not preserved any records about the incident. See Deposition of Ibrahim Abdullah (Abdullah Depo.) at 34:6-7, 9-11, 13-14. See Docket No. 47 (notice of lodging).

I. <u>Summary Judgment Standards</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See id.</u> at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On August 20, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

II. Evidentiary Objections

Defendant objects to much of plaintiff's supporting evidence; the court addresses each objection in turn.

    A. Declaration of Catrell Johnson

Inmate Catrell Johnson avers that on May 29, 2003, he was a representative of the Men's Advisory Committee and was making rounds through the building; that plaintiff said he needed medical care; and that Johnson alerted the floor officer, who escorted plaintiff to the medical clinic. Opposition (Opp'n), Ex. C, Declaration of Catrell Johnson (Johnson Decl.) at 31. Defendant argues there is no foundation for Johnson's statement that the floor officer escorted plaintiff to the clinic and that the statements are not relevant.

Under Rule 56(e) of the Federal Rules of Civil Procedure, a declaration submitted in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." The affiant's personal knowledge may include reasonable inferences, so long as they are "'grounded in observation or other first-hand personal experience'" or "substantiated by specific facts." Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003) (quoting Visser v. Packer Eng'g Assoc., 924 F.2d 655, 659 (7th Cir. 1991) (en banc)); Drake v. Minnesota Mining & Manufacturing Company, 134 F.3d 878, 887 (7th Cir. 1998). In this case, Johnson reasonably inferred that the floor officer escorted plaintiff to the clinic based on plaintiff's professed medical need and Johnson's communication of that need to the floor officer.

/////

/////

Moreover, while the declaration's relevance is not particularly strong, the fact that plaintiff solicited the assistance of another inmate in obtaining medical care tends to support his position that his medical need was acute.  See Fed. R. Evid. 401.

Defendant's objections on grounds of relevance and lack of foundation are overruled.

### B.  Declaration Of Gregory McClain

Inmate Gregory McClain avers, among other things, that he "observed Registered Nurse (R.N.) Cunningham and I/M Abdullah in a conversation, whereas I/M Abdullah was showing the nurse his [medical chrono]–apparently requesting care.  R.N. Cunningham told the inmate that, 'nothing was wrong with him' and had a M.T.A. escort him out of the clinic."  Opp'n, Ex. C, Declaration of Gregory McClain (McClain Decl.) at 33 (emphases in original). Defendant argues that these statements are irrelevant and lack foundation.

In this case, McClain's inference is not supported by his other averments. Although he was in the medical clinic when he observed defendant Cunningham and plaintiff in conversation, nothing in his extremely short declaration supports the inference that plaintiff was requesting care rather than requesting clarification of instructions, for example.  Defendant's objection to this statement is sustained.  On the other hand, defendant Cunningham's statement that there was nothing wrong with plaintiff, which McClain overheard, is in fact relevant to the question of deliberate indifference and will be considered.  The objection to this latter statement is overruled.

### C.  Medical Documents

Defendant objects to the four pages of medical documents plaintiff attaches as his Exhibit A, arguing that they lack foundation, are authenticated and contain multiple levels of hearsay.   Generally, unauthenticated documents cannot be used to oppose a motion for summary judgment.  Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987). However, when "it cannot reasonably be disputed that the records in question are plaintiff's

medical records from his prison file," or that "they are created and maintained by prison officials," the objection is unavailing. Fryman v. Traquina, 2009 WL 113590 at 11 n.5 (E.D. Cal. 2009); see also Fed. R. Evid. 901(4) (authentication by distinctive characteristics). Moreover, when defendant provides a scatter-shot objection to multiple layers of hearsay without specifically identifying those portions deemed objectionable, the objection is similarly unavailing. Sanchez v. Penner, 2009 W.L. 3088331 at 5 (E.D. Cal. 2009). These objections are overruled.

### D. Grievances

Defendant objects to a variety of inmate grievances that plaintiff attaches as his Exhibits D, E and F, on grounds they lack foundation, are unauthenticated, are irrelevant and contain multiple levels of hearsay. Defendant's authentication, foundation and hearsay objections are overruled. To the extent plaintiff seeks to show he filed a grievance against Dr. Nangalama, who has submitted a declaration in support of the motion for summary judgment, the grievance is not relevant because the court makes no credibility determinations on summary judgment. Anderson, 477 U.S. at 255. To the extent the grievances suggest plaintiff has received oxygen treatments subsequent to the incidents in the complaint, they are not relevant to the question of defendant Cunningham's deliberate indifference. Defendant's relevance objection is otherwise overruled.

## III. Facts

As part of his sickle cell disease, plaintiff suffers from priapism, which is a persistent erection of the penis unrelated to sexual stimulation or desire. Abdullah Depo. at 14:21-22, 15:5-6; Def.'s Mot. for Summ. J. (MSJ), Ex. C, Declaration of A. Nangalama (Nangalama Decl.) ¶ 2. Sometimes the condition subsides on its own. Abdullah Depo. at 15:5-6; Nangalama Decl. ¶ 4. A patient who suffers from a priapism incident for four to six hours would require immediate medical treatment. Nangalama Decl. ¶ 4. For a patient with an

/////

1  incident lasting "four hours or less," oxygen therapy treatment "might not be medically
2  necessary."  Id. ¶ 5.

3          After an episode of priapism in or about 2000 that did not go away on its own,
4  plaintiff was taken to an outside hospital, where the doctor prescribed oxygen therapy.  Abdullah
5  Depo. at 12:19-20, 14:5-7.  Although oxygen therapy is only one of many treatments for
6  priapism, CDCR doctors wrote plaintiff a "chrono" for oxygen treatment.  Nangalama Decl. ¶ 3;
7  Abdullah Depo. at 15:17-19; Opp'n, Ex. A at 21.  The chrono, dated June 6, 2002, provides:
8  "Medical Recommendation . . . For medical reasons, the following special medical
9  recommendation is made: Oxygen therapy in the clinic as needed for a sickle cell crisis or
10 priapism."  Opp'n, Ex. A at 21; Abdullah Depo. at 16:6-11.  When plaintiff took his chrono to
11 the clinic, the nurse on duty would provide the oxygen therapy.  Abdullah Depo. at 16:12-15.

12         Defendant Cunningham, a registered nurse, was responsible for assessing an
13 inmate's condition, documenting her findings, and then providing medically necessary treatment.
14 MSJ, Ex. B, Declaration of J. Cunningham (Cunningham Decl.) ¶ 3.  She would not have
15 conducted an examination of a male inmate with priapism, but rather would have asked a male
16 registered nurse or licensed vocational nurse to examine the inmate and inform her of the results.
17 Id. ¶ 4.  If she determined treatment was necessary, she would document that in the inmate's
18 medical file.  Id.  She would not necessarily consider a priapism incident lasting less than four
19 hours to require treatment, but one lasting more than four hours is a serious medical condition
20 requiring immediate medical attention.  Id. ¶ 6.

21         On May 29, 2003, plaintiff woke up with priapism and after about two hours was
22 escorted to the medical clinic.  Johnson Decl. ¶ 3; Abdullah Depo. at 37:19-20.  Defendant
23 Cunningham told plaintiff she did not want to see him, that there was nothing wrong with him
24 and told the officer to escort plaintiff back to his cell.  Abdullah Depo. at 18:23-25, 19:23-25.
25 Plaintiff was not even admitted to the clinic and there is no documentation in his medical file
26 /////

1  that defendant Cunningham had any contact with him.  Id. at 18:25, 19:18; Cunningham Decl.
2  ¶ 5.  On that day, his priapism lasted about four hours.  Abdullah Depo. at 21:14-15.

3  On June 2, 2003, plaintiff had another priapism incident and went to the medical
4  clinic.  Although he actually made it inside the clinic, when he told Cunningham he was having
5  another priapism, she went to the back of the clinic and never returned.  Abdullah Depo. at
6  20:20-24.  She told plaintiff there was nothing wrong with him.  McClain Decl. ¶ 4.  Shortly
7  after that, an officer escorted plaintiff back to his cell.  Abdullah Depo. at 21:1-3.  Plaintiff does
8  not recall how long the priapism lasted that day.  Id. at 40:1.  Cunningham does not recall this
9  contact and avers that plaintiff's medical file does not reflect it.  Cunningham Decl. ¶ 5.

10  On June 3, 2003, officers called the clinic on plaintiff's behalf to ask if he could
11  come for an oxygen treatment for priapism.  Abdullah Depo. at 21:9-11, 31:6-15.  Plaintiff got to
12  the clinic and showed his chrono to MTA Bax, who put plaintiff in the cage and said the R.N.
13  would be right with him.  Id. at 41:11-17.  No nurse came to see him and so after a period of time
14  longer than thirty minutes, he asked to be let out of the cage and left the clinic.  Id. at 21:12-14,
15  41:19-22.  Cunningham has no memory of this incident, which also is not documented in
16  plaintiff's medical file.  Cunningham Decl. ¶ 5.

17  Had plaintiff been provided oxygen therapy on those dates, clinic staff would
18  have called the doctor, who might prescribe other treatment measures, such as ice packs or pain
19  medication.  Abdullah Depo. at 30:19-25, 31:1-2.  In addition, had plaintiff received treatment
20  for earlier episodes of priapism, he understands he would not now have the difficulties he is
21  having managing the involuntary erections.  Id. at 15:5-11, 24:21-25.

22  IV.  Analysis

23  In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that
24  inadequate medical care did not constitute cruel and unusual punishment cognizable under
25  section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious
26  medical needs."

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

A medical need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059.

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment

Id. at 1060.

A showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998). A difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). However, deliberate indifference may be shown when prison personnel "deliberately defy the express instructions of a prisoner's doctors." Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); see also Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

1       In this case, it is undisputed that plaintiff had a chrono recommending that he be
2  given oxygen therapy when needed for priapism.  Defendant argues that emphasis should be
3  placed on the fact that the chrono makes a "recommendation" for treatment "as needed," giving
4  medical staff discretion.  Although defendant does not recall any contacts with plaintiff, she
5  suggests that had she determined that plaintiff needed treatment for priapism, she would have
6  documented that fact in his medical file.  Plaintiff asserts that on May 29 and June 2, defendant
7  made no attempt to determine whether oxygen treatment was necessary but simply told him there
8  was nothing wrong with him.  While defendant says she would consider a priapism incident
9  lasting more than four hours to constitute a serious medical need, she does not say that one of
10 shorter duration would automatically not require treatment or would not constitute a serious
11 medical need; she says simply it would "not necessarily require treatment."  Neither her
12 declaration nor that of Dr. Nangalama discusses whether repeated episodes, such as those
13 suffered by plaintiff, require a more aggressive response.  Even though the chrono was a
14 recommendation rather than an order, that recommendation had the effect of tasking medical
15 personnel with determining whether oxygen treatment was necessary when plaintiff presented at
16 the clinic with priapism or a sickle cell crisis.  The evidence is disputed whether defendant even
17 attempted to determine whether oxygen therapy was necessary on May 29 and June 2.  This
18 dispute is one of genuine material fact, such that a trier of fact is required to find whether
19 defendant's conduct on these dates constituted deliberate indifference to plaintiff's serious
20 medical needs.

21      The situation with respect to June 3 is different.  The undisputed evidence shows
22 that plaintiff presented his chrono to the medical technician, that the technician said a nurse
23 would be right with him; no nurse appeared; and then plaintiff left the clinic sometime longer
24 than thirty minutes after that.  Plaintiff has not shown defendant was the nurse on duty who
25 should have seen him and has not rebutted defendant's implied denial of any contact with him on
26 that day; he has not raised any disputed issue of fact as to this incident.

IT IS HEREBY RECOMMENDED that defendant Cunningham's motion for summary judgment (docket no. 46) be granted as to the incident of June 3, 2003, but denied as to the incidents of May 29 and June 2, 2003.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 18, 2010.

_____
U.S. MAGISTRATE JUDGE

2

abdu2378.57